Kunkle, J.
Plaintiff in error, Reamy A. Wilson, brought an action to contest the will of William M. Wilson, claiming to be the only child and heir at law of said William M. Wilson.
The legatees, devisees and the executor named in the said will were made parties defendant.
Defendants below filed an answer consisting of a general denial of all the facts contained in the petition except the death of William M. Wilson; the fact that he left surviving him his wife, De *259 Etta Wilson; the fact that his will has been duly-proven; that the said De Etta Wilson is his executrix; and that the persons named in the petition are devisees and legatees under the will.
Subsequent to the filing of said answer, two of the defendants, Nellie Van Horn Moorehead and Mary Van Horn Smith Dare, filed a plea in abatement, in which they deny that plaintiff in error is a child or heir at law of William M. Wilson, deceased, and further state that the plaintiff in error is not related to said William M. Wilson and has no interest whatever in the subject-matter of the suit.
Thereupon the case came on for hearing upon the said plea in abatement, and was submitted to the court upon such plea and the evidence.
The trial court found that the plaintiff in error was not an heir at law of William M. Wilson, deceased, and had no interest in his estate and no right to maintain this action.
The plea in abatement was therefore sustained and the petition dismissed.
From such judgment, plaintiff in error prosecutes error to this court.
We have carefully read the record in this case and considered the various authorities cited in the briefs of counsel. We shall not, however, attempt to discuss either the evidence or the authorities in detail, but will merely announce the conclusion at which we have arrived after a careful examination of the record and authorities cited.
In brief, however, it appears from the record that the said William M. Wilson was married to Ida J. Dawes on January 10, 1876, at Logansport, *260 Indiana; that at the time of said marriage the said Ida J. Dawes was pregnant, and that a child was born to her June 23, 1876, at Cincinnati, Ohio.
The testimony tends to show-that shortly prior to the marriage of the said William M. Wilson and Ida J. Dawes the said Wilson attempted to induce Ida J. Dawes to go to Dayton, Ohio, for the purpose of having an abortion committed, and that her refusal to do so angered the said Wilson; that he did induce her, however, to go to Cincinnati for the same purpose; and that she went to the hospital of Dr. Reamy at Cincinnati, where the said Wilson had arranged for her treatment. The record discloses that in the meantime the family of Ida J. Dawes became alarmed and sought out the said William M. Wilson and demanded that he disclose the whereabouts of the said Ida J. Dawes.
It appears that as a result of these efforts Ida J. Dawes was brought back to Logansport, Indiana, the home of herself and also of the said Wilson.
A family conference was held with the said Wilson, which resulted in his agreeing to marry the said Ida J. Dawes. The mother of Ida J. Dawes insisted upon the marriage for the purpose of giving the expected child a name. The following appears on page 5 of the record:
“He' [meaning the said Wilson] said he would marry her but he would not live with her. He wasn’t going to be disgraced and would not have this thing made public but he would marry her. And my mother said she simply asked for a name for the child. He was willing and brought his license and the minister — an Episcopal minister.”
*261 The marriage ceremony was performed at the home of Ida J. Dawes, in the presence of members of her family and John C. Nelson, a friend of the said Wilson, the said Nelson, who testifies in this case, bqing invited by Mr. Wilson to accompany him.
Immediately after the marriage, the testator left his said wife and did not subsequently live with her.
Shortly after the marriage of the said parties, and before the birth of the child, the said parties were divorced by the circuit court of Cass county, Indiana. The wife secured the divorce and also an allowance for alimony.
In her complaint for divorce she asked for alimony for the support of herself and to pay the expenses of her expected sickness, and also asked for the custody of her unborn child.
The court found the facts stated in the complaint to be true; granted the divorce; and awarded her alimony and also the custody of the unborn child.
Among other things, it is urged by counsel for plaintiff in error that the trial court erred in hearing and considering the special plea in abatement, which was filed by two of the defendants after they had joined with the other defendants in filing an answer to the merits of the case.
Counsel for plaintiff in error concede that their client’s right to maintain an action to contest the will may be properly raised and determined on a motion in the nature of a plea in abatement, but they insist that such plea was waived in the case at bar by reason of the fact that all. of the defendants filed an answer to the merits of the case.
*262 In a suit to contest a will the statute requires that an issue be made up and tried as to whether the paper writing in question is or is not the valid last will and testament of the testator. This,- therefore, is the only issue contemplated in the final submission of’the case to the jury.
The question of plaintiff’s interest or right to maintain the suit should therefore be made by a special plea, and should be tried and determined before trial on the issue as to the validity of the will. The answer which was filed in this case is in substance a general denial, and is therefore not inconsistent with a plea in abatement, for the reason that such plea also denies the allegations of the petition as to the heirship of plaintiff in error.
If the plaintiff in error is not an heir of the decedent, then he has no interest in the subject-matter and cannot maintain this action.
We think the trial court properly heard the case upon the plea in abatement.
Upon the question of the heirship of plaintiff in error, after a careful consideration of the record, and especially of the acts and the conduct of the said William M. Wilson, we are of opinion that the evidence establishes the fact that the said William M. Wilson was the father of plaintiff in error, and that the marriage in question, under the circumstances disclosed by the record, was an acknowledgment upon the part of William M. Wilson of the paternity of this child.
Upon the marriage of the said Wilson and Ida J. Dawes, the unborn child became legitimate and was capable of inheriting from the father under the common law.
*263 In the case of Miller v. Anderson, 43 Ohio St., 473, the opinion of Judge Atherton contains a general discussion of the common-law rule in respect to the legitimacy of children.
We think this discussion applies to heirship and the right of inheritance, although the issue in that case was limited to proceedings under the bastardy statutes.
■ Among the authorities discussed by Judge Atherton in the decision above referred to is the case of Tioga County v. South Creek Township, 75 Pa. St., 433, in which the following language is used:
“That the parents should be permitted to bastardize the child, is a proposition which shocks our sense of right and decency, and hence the rule of law forbids it.”
Further mention is also made by Judge Atherton of the following rule:
“This doctrine is recognized in Parker v. Way, 15 N. H. Rep., 45; Davis v. Houston, 2 Yeates, 289; Page v. Dennison, 1 Grant’s Cases, 377; S. C., 29 Pa. St., 420, in which case the court in addition hold that: Whether the child is begotten in or out of wedlock, if marriage precedes the birth, the presumption of paternity is the same, and it can only be bastardized by proof of non-access.’ ”
There is also discussed in this decision the case of State v. Romaine, 58 Ia., 48, wherein the rule is announced that “if á woman be pregnant at the time of the marriage, and if pregnancy be known to the husband, he should be conclusively presumed to be the father.”
Reference is also made therein to the case of *264 State v. Herman, 13 Ired., 502, wherein the supreme court of North Carolina holds :
“A child born in wedlock, though born within a month or a day after marriage, is legitimate by presumption of law, and where the mother was visibly pregnant at the marriage, it is a presumption juris et de jure that the child was the offspring of the husband.”
Without further citing authorities, we think the rules above announced are well established.
Under the common law, the child was considered as being in legal existence and capable of inheriting as a legitimate child from the date of the marriage between the natural father and mother, irrespective of shortness of time of birth of the child after such marriage.
If the unborn child is legitimatized by the act of marriage, then in our opinion the child cannot thereafter be bastardized or rendered illegitimate by any subsequent -act of either of its parents.
It is in effect conceded by counsel for defendants in error that if the decree for divorce between the father and mother of this child had been withheld until after the birth of the child, the child would then be legitimate, as it would have been born during actual wedlock.
Under the statutes of our state, as well as under common law, we are of opinion that a decree for divorce between the parties does not affect the status of children, and we think this rule would include children en ventre as well as those actually born.
It appears from the record that the decree for the divorce in question does not undertake to *265 bastardize the unborn child, but recognizes it as a feature of the marriage and fixes its custody.
The law favors the legitimacy of children, and it would be a harsh rule which would permit a decree for divorce between the parents to so operate as to bastardize an unborn child that would have been considered legitimate had the entry of divorce been withheld a day, a week, or for any period of time after the birth of the child.
We think a holding to the effect that a decree for divorce can operate to change the status of an unborn child is contrary to the humane policy of the law.
We have considered this case as one arising under the Ohio law, for the reason that the law of Indiana, to which reference is made, is. not plead nor proven, and the presumption is that the law of the forum controls the rights of the parties. Erie Rd. Co. v. Welsh, 89 Ohio St., 81; Coffinberry v. Blakeslee, 22 C. C., N. S., 34, and Wettstein v. Bankers’ Natl. Bank, 20 C. C., N. S., 204.
Upon a careful consideration of the entire record and the authorities cited, we are forced to the conclusion that the judgment of the trial court is contrary to the evidence. Such judgment will therefore be reversed and the cause remanded for further proceedings.

Judgment reversed.

Allread and Ferneding, JJ., concur.